333 F.2d 685
 Lewis W. TWOMBLEY, Appellant,
v.
CITY OF LONG BEACH, a California Municipal Corporation;
Murray T. Courson,City Auditor, of the City of Long Beach,
California; State of California; andThe State Lands
Commission of the State of California, Appellees.
 No. 18574.
 United States Court of Appeals Ninth Circuit.
 June 25, 1964, Rehearing Denied Sept. 14, 1964, Certiorari
Denied Nov. 9,1964, See 85 S.Ct. 195.
 
 Frank C. Aldrich, Aldrich & Hitt, Long Beach, Cal., Herman F. Selvin, Los Angeles, Cal., for appellant.
 Stanley Mosk, Atty. Gen., Ernest E. Sanchez, Norman G. Taylor, Deputy Attys. Gen., Los Angeles, Cal., for appellees State of Cal. and State Lands Commission of State of Cal.
 Gerald Desmond, City Atty., John C. Spence, Jr., and Philip J. Brady, Asst. City Attys., Malcolm E. Uptegraff, Deputy City Atty., Long Beach, Cal., for appellees City of Long Beach and Murray T. Courson.
 Carl Whitson, in pro. per.
 Before BARNES, JERTBERG and MERRILL, Circuit Judges.
 MERRILL, Circuit Judge.
 
 
 1
 The question presented by this appeal is whether the City of Long Beach, California, holds fee title to the submerged lands (lands covered by navigable nontidal waters) within its boundaries, free from any right in the State of California.
 
 
 2
 Appellant, as a citizen, resident and taxpayer of the City of Long Beach, has brought this action against Long Beach and the State of California, asserting that Long Beach has such fee title, but is wrongfully paying to the State a portion of its revenue from such lands under the erroneous assumption that it is legally obligated to do so. The complaint sought an injunction against further payments to the State and a declaration of Long Beach's title. Appellant asserts that the City's title was derived from the United States by the provisions of the Submerged Lands Act, 67 Stats. 29 (1953), chapter 31, 43 U.S.C. 1301-1343. He invokes Federal jurisdiction under 28 U.S.C. 1331, upon the ground that the interpretation of an Act of Congress is essential to his claim.
 
 
 3
 The action was dismissed by the District Court of the Southern District of California, Central Division, for failure of the complaint to state a claim. This appeal followed.
 
 
 4
 Prior to United States v. California (1947) 332 U.S. 19, 67 S.Ct. 1658, 91 L.Ed. 1889, it had generally been regarded as the law that title to submerged lands lay in the several states. By that decision title was held to be in the United States. The rights and investments under innumerable grants and leases from the states were placed in peril.
 
 
 5
 Congress dealt with the situation by the Submerged Lands Act, supra. Section 1311(a) states that 'title to and ownership of the land beneath the navigable waters within the boundaries of the respective States, and the natural resources within such land and waters * * * (is) recognized, confirmed, established, and vested in and assigned to the respective States or the persons who were on June 5, 1950, entitled thereto under the law of the respective States in which the land is located * * *.'
 
 
 6
 Appellant's contention here is that by virtue of a grant from the State of California, Long Beach was, on June 5, 1950, the person entitled to the submerged lands within its boundaries.
 
 
 7
 By Act of the State Legislature, May 1, 1911, Cal.Stats. 1911, p. 1304, Long Beach was granted 'all the right, title and interest of the State of California, held by said state by virtue of its sovereignty, in and to all the tidelands and submerged lands, whether filled or unfilled, within the present boundaries of said city * * *.' The grant provided, however, that it was 'in trust for the uses and purposes, and upon the express conditions following.' It was then specified that the lands so granted 'shall be used by said city * * * solely for the establishment, improvement and conduct of a harbor' including facilities for the promotion and accommodation of commerce and navigation.
 
 
 8
 By later enactments the nature of the trust and the limitations upon use that it constituted were somewhat modified. In City of Long Beach v. Morse (1947) 31 Cal.2d 254, 188 P.2d 17, it was held that revenues derived from the lands were also subject to the trusts imposed.
 
 
 9
 By Act of June 6, 1951, the State declared 'free from the public trust,' and thus took to itself, one half of the oil revenues and all 'dry gas' revenue derived by Long Beach from the lands so granted. That Act found and determined as fact that Long Beach, since 1939, had produced large quantities of oil, gas and other hydrocarbon substances from the lands conveyed and had derived substantial revenue therefrom; that the expenditure of more than the sums left remaining subject to the trust 'would be economically impracticable, unwise and unnecessary.'
 
 
 10
 Subsequently, in Mallon v. City of Long Beach (1955) 44 Cal.2d 199, 282 P.2d 481, the Supreme Court of California held that this statutory enactment had the effect of creating a resulting trust in favor of the State of California, and that the State and not Long Beach was entitled to the revenues freed from the statutory trusts.
 
 
 11
 Finally, by chapter 29 of the Statutes of 1956, the California State Legislature approved and directed a settlement between Long Beach and the State, and directed that subject to certain costs the City should pay over monthly to the State of California one half of the oil revenue and all dry gas revenue derived from submerged lands.
 
 
 12
 Appellant contends that California had no right to impose conditions or trusts in its grant to Long Beach since it had at that time no title to the submerged lands. He contends that the City's title came not from California but directly from the United States; that California's only function in all of this was to point the finger at the person entitled, and only the United States, which has not done so, could impose restrictions.
 
 
 13
 Furthermore, appellant contends, California law does not establish the State's right to enforce the conditions imposed. As we understand appellant's position, he asserts that the law of California (as it existed prior to United States v. California, supra) respecting its right and title under the grant to Long Beach, is laid down in City of Long Beach v. Marshall (1938) 11 Cal.2d 609, 82 P.2d 362. There, in confirming Long Beach's title to the land, says appellant, the decision established California law to the effect that upon California's admission to the Union it had acquired title to submerged lands by virtue of its sovereignty, subject to certain public trusts; that by its grant to Long Beach it had parted with all proprietary ownership, retaining only that title which it had felt it held in trust for the public. By United States v. California, argues appellant, it was established that California had neither proprietary nor trust ownership. By the Submerged Lands Act, appellant argues, the United States granted proprietary ownership to California but imposed no public trust duties upon the State. Appellant reasons that the 'trust' ownership which the State had retained was, under United States v. California, supra, in fact retained for the benefit of the United States which had not imposed trust conditions when it 'granted' the land to Long Beach. Thus the trust conditions imposed by the State were terminated.
 
 
 14
 We cannot agree with appellant's position. It is clear from the Act itself and from legislative history that Congress, by the Submerged Lands Act, wished to confirm and not to undo or override arrangements theretofore made by the several states.
 
 
 15
 The majority report upon the bill, which became the Submerged Lands Act, Volume 2, U.S.Code Congressional and Administrative News, 83rd Congress, 1st Session, 1953, pages 1385, 1423, states in part:
 
 
 16
 'We are certain that until the Congress enacts a law consonant with what the States and the Supreme Court believed for more than a century was the law, confusion and uncertainty will continue to exist, titles will remain clouded, and years of vexatious and complicated litigation will result.'
 
 
 17
 Therefore, the report states at page 1422, 'the Congress should now remove all doubt about the title by ratifying and confirming the titles long asserted by the various States.'
 
 
 18
 The Act itself, in defining 'grantees' and 'lessees,' 1301(d), states: 'Provided, however, That nothing herein shall be construed as conferring upon said grantees or lessees any greater rights or interests other than are described herein and in their respective grants from the State, or its predecessor sovereign.'
 
 
 19
 In dismissing the action the district court states:
 
 
 20
 'Plaintiff's technical argument fails to answer the point repeatedly made by defendants that Congress intended by the Submerged Lands Act to 'confirm' whatever conveyance of title the states had already made. Plaintiff cannot rely on the statutory conveyances made to Long Beach, while at the same time insisting that the conditions of trust contained in the conveyances be deleted.'
 
 
 21
 We agree.
 
 
 22
 Appellant argues that even if the Submerged Lands Act is construed to confirm the pre-existing status of the City of Long Beach's ownership, subsequent California legislation appropriating part of the revenue produced is ineffective. This is so, appellant contends, because the statute (Cal.Stats.1951, ch. 915) was enacted after United States v. California but before the Submerged Lands Act, a period during which California lacked ownership of the land.
 
 
 23
 It is true that California's decision to free certain revenues from the public trust was made subsequent to June 5, 1950. However, it is clear from Mallon v. City of Long Beach, supra, and City of Long Beach v. Morse,supra, that the right of the State to lay claim to surplus trust revenue arose out of the original grant to Long Beach in 1911, and that the Act of 1951 amounted to no more than a varying of the terms of the original trust as to the manner in which trust property was to be put to public use. The Act of 1951, then, did not impinge upon rights of Long Beach as of June 5, 1950. It dealt with trust property as to which Long Beach then was and had always been accountable to the State in accordance with such directions as the State from time to time should make.
 
 
 24
 Finally, appellant contends that even assuming California had the general power to impose trusts and conditions, it could not do so in the area of commerce and navigation, since the United States in the Submerged Lands Act itself, 1314, has expressly retained its powers of regulation and control of such lands and navigable waters 'for the constitutional purposes of commerce, navigation * * *.'
 
 
 25
 Even assuming merit in this contention (which we doubt) it cannot aid appellant. If the trust were illegally created, or the carrying out of the trust purposes became illegal after creation, Long Beach would have lost its sole claim to right as the State's grantee and would hold all revenues for the State on a resulting trust. See 3 Scott, Trusts, 335, 345.3 (2d Ed.); 4 Scott, supra, 422.
 
 
 26
 Judgment affirmed.